# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Eric Smith,

        Petitioner,

  v.

Timothy Wengler,

        Respondent.

Civil No. 08-1113 (JRT/AJB)

**REPORT AND RECOMMENDATION**

---

ARTHUR J. BOYLAN, United States Magistrate Judge

The above-captioned case is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 (Doc. No. 1). Petitioner Eric Smith appears pro se. Respondent appears by Michael K. Walz, Assistant Hennepin County Attorney. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that Petitioner's application for habeas corpus relief be denied and dismissed with prejudice.

## I.      BACKGROUND

After a jury trial, Petitioner Eric Smith was convicted of second degree controlled substance crime on May 27, 2005. (Petition ¶¶ 1-2, Docket No. 1); State v. Smith, A05-1641, 2007 WL 968397 (Minn. Ct. App. April 3, 2007) *rev. denied* (June 19, 2007). Petitioner was sentenced to 111 months, and is currently incarcerated in the Prairie Correctional Facility in Appleton. (Petition, ¶ 3.) On Petitioner's appeal, the following facts were recited by the Minnesota Court of Appeals.

In early November 2004, an undercover Minneapolis police officer received a tip from a confidential reliable informant (CRI) that [Petitioner] Eric Smith would be delivering cocaine to a location in Minneapolis.  The CRI indicated that [Petitioner] would be driving a gray or silver Cadillac, gave the license plate number of that vehicle, and indicated that [Petitioner] would be accompanied by another individual.  The CRI also indicated that [Petitioner] often carried drugs in his buttocks area.

Acting on this tip, the undercover officer set up a multiple-officer surveillance team at the designated location.  The CRI accompanied the officer and identified [Petitioner] and the other individual when they arrived in a car matching the CRI's previous description.  The car was stopped, and [Petitioner] was arrested and frisked.  When no contraband was found, [Petitioner] was transported to the police station.

At the station, [Petitioner] was strip searched.  The undercover officer testified that he removed a cellophane bag that was protruding from [Petitioner's] buttocks.  Other officers present during the search corroborated this testimony. The undercover officer then placed the cellophane bag in an evidence bag and locked it in his desk overnight.  Department policy required that evidence be inventoried in the Department's evidence room or placed in a secure evidence locker after hours

Subsequent tests revealed that the cellophane bag contained 7.22 grams of cocaine, and [Petitioner] was charged with second-degree controlled-substance crime. [Petitioner] made a number of pretrial motions, including a motion to compel disclosure of the CRI's identity, a motion to compel discovery of disciplinary complaints against the undercover officer, and a motion to suppress the evidence in this case.  The district court denied [Petitioner's] pretrial motions, and a jury trial commenced.

After the jury began deliberating, it asked to rehear the undercover officer's testimony.  The judge conferred with counsel and asked the jury to narrow its request.  The judge then read the requested portions of the undercover officer's testimony.  The jury ultimately found [Petitioner] guilty as charged.

Following the verdict, the district court polled each juror, and all agreed that the correct verdict was guilty.  Shortly thereafter, the jury's foreperson wrote two letters to [Petitioner's] trial counsel questioning the verdict, and [Petitioner] brought two motions for a

Schwartz hearing to try to impeach the jury verdict.  The motions
were denied.  This appeal followed.

<u>Smith</u>, 2007 WL 968397, at *1-2.

The Minnesota Court of Appeals held that Petitioner was afforded ample opportunity to question the undercover officer at the suppression hearing.  <u>Id.</u>, at 3.  It held that the district court did not obtain material evidence *in camera* that prejudiced Petitioner's right to be present and confront the officer on the issue of the CRI's reliability.  <u>Id.</u>  It further held the district court did not err in denying Petitioner the right to be present during the *in camera* portion of the suppression hearing.  <u>Id.</u>

The court also held that Petitioner's case was not prejudiced by the prosecution's failure to disclose the fact that the undercover officer monitored a phone call between Petitioner and the CRI because there was probable cause independent of that evidence.  <u>Id.</u> at *4.  In another discovery challenge, the court held that the district court did not abuse its discretion by denying discovery of the files and data regarding disciplinary complaints about the undercover officer.  <u>Id.</u> at *6.  The court also held that the district court did not abuse its discretion by reading a portion of the undercover officer's testimony in response to a request from the jury.  <u>Id.</u> at *7.

On appeal, Petitioner further argued that the evidence found during the strip search should have been suppressed because he did not consent to the search.  The court held that Petitioner's consent was not necessary because there was probable cause to arrest him, he was under arrest at the time of the strip search, and based on information from the CRI, the undercover officer had reason to believe Petitioner was hiding narcotics in his buttocks.  <u>Id.</u>  The court also held that the officer's violation of the police department's evidentiary policy, locking the drugs in his desk after hours, did not mandate suppression.  <u>Id.</u> at *8.

The court noted that Petitioner requested a Schwartz hearing on juror misconduct after receiving two letters from a juror.  Id.  In the first letter, the juror stated that he discovered the disciplinary complaints against the undercover officer.  Id.  The second letter stated that the foreperson felt manipulated by the undercover officer being in the courtroom during closing argument.  Id.  The court held that the foreperson's letters did not establish jury misconduct, and a Schwartz hearing was not necessary.  Id.  Finally, the court held that the prosecutor was not given an unfair advantage when he inadvertently received the undercover officer's "base file," which included disciplinary complaints, because defense counsel was allowed to view the same file.  Id. at *9.  The Minnesota Supreme Court denied Petitioner's request for review on June 19, 2007.

On April 22, 2008, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  He raises three grounds for relief.  See, Petition at 9.  In Ground One of the petition, Petitioner alleges he was illegally seized, searched, and arrested under a false pretense of a minor traffic violation.  In Ground Two of the petition, Petitioner argues the prosecutor committed misconduct by intercepting the base file of police officer David Menter, reading it, and then sealing it back up.  In Ground Three, Petitioner contends the judge abused his discretion by holding an in camera discussion with Officer David Menter, in violation of Petitioner's right to confrontation, and by not suppressing the illegally seized evidence.

In response to the habeas petition, Respondent contends Petitioner's arrest and search was constitutional, based on reasonable suspicion to stop, probable cause to arrest, and probable cause to strip search.  State's Memorandum (State's Mem."), Docket No. 9, at 4-11.  Respondent argues Petitioner did not exhaust the state court remedies for his claim that the prosecutor committed misconduct by reading the internal affairs file of Officer Menter.  Id. at

4

12-14.  Respondent further asserts Petitioner failed to fairly present the federal nature of this

claim to the state courts, and is now precluded by state procedural rules from doing so, thus his

claim is defaulted.  Id.  Finally, Respondent contends the *in camera* suppression hearing did not

violate Petitioner's constitutional right to a public trial, and the trial court's decision to limit the

disclosure of the informant's identity was in keeping with federal law.  Id. at 16-23.

In reply, Petitioner first asserts that the state court decision is contrary to and an

unreasonable application of clearly established law articulated in the U.S. Supreme Court case

Hayes v. Florida, 470 U.S. 811 (1985) concerning unreasonable search and seizure.  Reply to

Memorandum in Support of Petition for Writ of Habeas Corpus ("Reply"), Docket No. 13, at 3.

Second, Petitioner argues that his Sixth Amendment rights to a public trial and to confront

witnesses against him were violated because he was not allowed the opportunity to cross-

examine the CRI at trial, and because the trial court closed the courtroom to conduct an *in

camera* hearing on the reliability of the CRI.  Id. at 4-12.

Petitioner cites Waller v. Georgia, 467 U.S. 39 (1984) for the proposition that the state

court decision is contrary to and an unreasonable application of clearly established federal law

concerning the right to a public trial, including suppression hearings.  Id. at 10.  Petitioner also

cites Hopt v. Utah, 110 U.S. 574, 579 (1884) for the proposition that he has a due process right

to be present at every stage of trial where one of his substantial rights may be affected by the

proceedings against him.  Id.  Petitioner contends the prejudice standard should be addressed

under Brecht v. Abrahmson, 507 U.S. 619, 631 (1993), and while it is a deferential standard, he

argues the prejudice resulting from the *in camera* hearing before trial meets that standard.  Id. at

11.

## II.      REQUEST FOR EVIDENTIARY HEARING

Dismissal of a habeas petition without a hearing is proper where the dispute can be resolved on the basis of the record.  Wallace v. Lockhart, 701 F.2d 719, 729 (8th Cir. 1983). Based on the entire record, as discussed below, this case should be dismissed in part on procedural default, and in part because the state court decision is consistent with clearly established federal law.  Thus, an evidentiary hearing is unnecessary.

## III.    DISCUSSION

Habeas review is available to determine whether there has been a violation of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The Anti-terrorism and Effective Death Penalty Act "AEDPA" limits habeas review to adjudications that:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### A.      Search and Seizure (Ground One)

Petitioner contends he was stopped for a minor traffic violation, which led to his arrest and strip search in violation of the Fourth Amendment prohibition of unreasonable search and seizure.  Respondent, on the other hand, argues that the constitutionality of the stop and arrest rises and falls upon whether the information obtained from the CRI established probable cause to stop, arrest, and search Petitioner.

Petitioners for habeas corpus relief face additional hurdles when raising Fourth Amendment claims.  A petitioner may not raise a Fourth Amendment claim in a habeas petition when the state has afforded the petitioner a full and fair opportunity to litigate those claims.

6

Poole v. Wood, 45 F.3d 246, 249 (8th Cir. 1995) (citing Stone v. Powell, 428 U.S. 465 (1976)).

Fourth Amendment claims are treated differently than other constitutional claims due to the

special nature of the exclusionary rule.  Willet v. Lockhart, 37 F.3d 1265, 1269-70 (8th Cir.

1994).  The exclusionary rule is not a personal constitutional right, but a judicially created

remedy designed to discourage Fourth Amendment violations.  Id. (citing Stone, 428 U.S. at 482,

486, 492).  The exclusionary rule can also work against the truth-finding process because it can

result in the exclusion of evidence that is typically reliable and probative of guilt.  Id. at 1269.

Therefore, Fourth Amendment claims are excepted from the full review provided for other

constitutional claims raised in federal habeas cases.  Id.  A claim is barred from habeas review

by the U.S. Supreme Court's decision in Stone unless the state provided no procedure by which

the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using

that procedure because of an unconscionable breakdown in the system.  Poole, 45 F.3d 246, 249.

     Petitioner challenged his stop, arrest, and search in a pretrial hearing,[1] and then on direct

appeal.[2]  Thus, he was afforded a full and fair opportunity to litigate those claims in state court,

and habeas relief is not available.  See Tramble v. Minnesota, Civ. No. 07-4077 (PAM/JJG),

2007 WL 3225130, at *1 (Oct. 29, 2007) (denying habeas review where Petitioner challenged

search and seizure in trial and appellate courts).

    B.    Prosecutorial Misconduct (Ground Two)

     Petitioner contends the prosecutor committed misconduct by opening Officer Menter's

---

[1]    See State's Answer to Order for Supplemental Appendix, Docket No. 16, Appendices 6A-C.

[2]    Id. at Appendices 2-3, and State v. Smith, A05-1641, 2007 WL 968397 (Minn. Ct. App. April 3, 2007) rev. denied (June 19, 2007).

base file, viewing documents concerning disciplinary proceedings against Menter, and resealing the file.  Respondent argues this claim is unexhausted and procedurally defaulted.

It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies.  28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509, 518-19 (1982).  The exhaustion of state remedies requirement is based on principles of comity and federalism, as its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors.  O'Sullivan, at 844-45; Rose, at 518-19.

In order to exhaust state court remedies, a prisoner must fairly present his constitutional claims to the highest available state court before seeking relief in federal court.  O'Sullivan, at 845; Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)("before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.")  The federal nature of the claim must be fairly presented in state court by reference to a specific federal constitutional right, a federal case, or a state case, which raises a pertinent federal constitutional issue.  Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005); Abdullah v. Groose, 75 F.3d 408, 411-12 (8th Cir. 1996).  "[O]rdinarily, a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim, in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 32 (2004).

Under Minnesota law, "[o]nce a [defendant] has taken a direct appeal, all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are

barred from consideration in any subsequent petitions for post-conviction relief." Cooper v. State, 745 N.W.2d 188, 190-91 (Minn. 2008) (quoting State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976)).  If the Petitioner has failed to exhaust his state court remedies, and if the court to which he should have presented his claim would now find it procedurally barred, then the claim is procedurally defaulted.  Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).  A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is firmly established and regularly followed.  Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995).  Minnesota's Knaffla rule is a state procedural rule that is firmly established and regularly followed.  See 9 MINN. PRAC., CRIMINAL LAW AND PROCEDURE § 39.1 (3rd ed.) (stating Knaffla rule is "frequently and strictly applied to deny relief in post conviction proceedings.)  Although the State Court procedural bar is "nearly absolute," a Petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence.  Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991.))

Upon review of Petitioner's briefs to the Minnesota Court of Appeals, this Court finds that Petitioner did not fairly present the federal nature of his prosecutorial misconduct claim.  He did not mention the Due Process Clause of the Fourteenth Amendment, any federal case discussing prosecutorial misconduct, or a state case which discussed the federal standard of review.  See State's Answer to Order for Supplemental Appendix ("Supp. Appx."), Docket No. 16, Appendices 2-3; see also, Baldwin v. Reese, 541 U.S. 27, 32 (2004) (litigant "can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case

deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'")  This

federal claim was known to Petitioner at the time of his direct appeal, but he raised only state

law issues.  Thus, <u>Knaffla</u> now bars reconsideration of this claim in the state courts, and the

claim is unexhausted and procedurally defaulted.  Petitioner has not attempted to establish cause

and prejudice for the default or actual innocence.  Therefore, this claim should be dismissed with

prejudice.

      C.     <u>Right to a Public Trial (Ground Three)</u>

Petitioner cites <u>Waller v. Georgia</u>, 467 U.S. 39, 47 (1984) for the proposition that his

Sixth Amendment right to a public trial was violated when the trial court conducted an *in camera*

discussion with Officer Menter concerning the reliability of the CRI.  Respondent, on the other

hand, cites <u>United States v. Lapsley</u>, 263 F.3d 839 (8th Cir. 2001) for the proposition that it is

proper for a trial court to hold an *in camera* hearing to determine whether the identity of a CRI

should be disclosed.

The Supreme Court held that "under the Sixth Amendment any closure of a suppression

hearing over the objections of the accused must meet the tests set out in <u>Press-Enterprise</u>[3] and its

predecessors."  <u>Waller</u>, 467 U.S. at 47.  "Under Press-Enterprise, the party seeking to close the

hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no

broader than necessary to protect that interest, the trial court must consider reasonable

alternatives to closing the proceeding, and it must make findings adequate to support the

closure."  <u>Id.</u> at 48.  In <u>Waller,</u> the prosecutor argued that if certain wiretap evidence was

published in open court, it would render the evidence inadmissible against others in future

---

[3]

prosecutions.  Id. at 41-42.  The entire suppression hearing, which lasted seven days, was closed.
Id.  The Supreme Court held that the trial court's findings concerning the overriding interest in
closing the suppression hearing were broad and general, and did not justify closure of the entire
proceeding.  Id. at 48-49.  In a habeas case, the Eighth Circuit Court of Appeals distinguished
Waller as a case involving a complete closure of a hearing, and instead required only a
*substantial reason* for the partial closure of a hearing.  Garcia v. Bertsch, 470 F.3d 748, 752-53
(8th Cir. 2006) (emphasis added).  The court noted, "[t]he Supreme Court has not spoken on the
partial closure issue, and the Court's closest case, Waller, is distinguishable on its facts."  Id. at
754.

     The Minnesota Court of Appeals held that the district court did not err in denying
Petitioner the right to be present during a portion of the suppression hearing, but did not
articulate its reasoning under federal law, although it cited a state case, which in turn cited
Waller.  Smith, 2007 WL 968397, at *3 (citing State v. Fageroos, 531 N.W.2d 199, 201 (Minn.
1995)).  Under AEDPA, "where the state court has not articulated its reasoning, federal courts
are obligated to conduct an independent review of the record and applicable law to determine
whether the state court decision is contrary to federal law, unreasonably applies clearly
established law, or is based on an unreasonable determination of the facts in light of the evidence
presented . . . .  [citations omitted.]  That independent review, however, is not a full, de novo
review of the claims, but remains deferential because the court cannot grant relief unless the state
court's result is not in keeping with the strictures of the AEDPA."  Harris v. Stovall, 212 F.3d
940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001).[4]   Therefore, the Court will

_____

[4]    The standard of review prescribed by the Sixth Circuit in Harris has been
approved by numerous federal courts, including the Eighth Circuit Court of

independently review this claim.

In this case, unlike Waller, the trial judge sua sponte decided to question a witness *in camera* when the State objected to cross examination that might reveal the identity of a CRI. See Supp. Appx., Appendix 5B, at 76-77.  Petitioner did not object to the closure until after the hearing was reopened, and apparently did so because the judge indicated that he determined the CRI was reliable, which was not the purpose of closing the hearing.  Id.  The Waller test expressly applies to closure of a hearing over the objections of the accused.  Waller at 47.  It is not clear whether it applies when the accused complained only after the closure.  Nevertheless, under Waller, there is a strong government interest in encouraging individuals to provide information to law enforcement without fear of reprisal.  Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1053 (8th Cir. 2007).  The trial judge closed the hearing to determine whether a particular question might reveal the identity of the informant.  See Supp. Appx., Appendix 5B, at 76-79.  Although the trial judge did not specifically state that there were no alternatives to briefly closing the hearing, there seemed to be no other way for the trial judge to determine whether the particular question at issue would reveal the identity of the informant. The judge reopened the hearing and sustained the State's objection that brought about the closure of the hearing, but allowed Petitioner to continue cross-examining the officer.  Id. at 80-81.  The scope of the closure was narrowly tailored to protect the interest in maintaining the secret identity of the CRI.   Although Petitioner was not allowed to inquire into the identity of the CRI, an issue that is not before this Court, he was otherwise given an opportunity to challenge the reliability of the CRI through extensive examination of the undercover officer.

---

Appeals in Niederstadt v. Nixon, 465 F.3d 843, 846 (8th Cir 2006), rehearing en banc granted, opinion vacated on other grounds (Dec. 13, 2006).

Thus, the district court did not err in denying Petitioner the right to be present during a portion of the suppression hearing under either the Waller test or the substantial reason test of Garcia. Petitioner's Sixth Amendment right to a public trial was not violated and this claim should be dismissed.

        D.      Due Process (Ground Three)

Petitioner cites Hopt v. People, for the proposition that the trial court violated his due process right "to be present at every stage of the trial when his substantial rights may be affected by the proceedings against him." Petition, at 22 (quoting Hopt, 110 U.S. 574, 579 (1884)). "The broad dicta in Hopt . . . that a trial can never continue in the defendant's absence ha[s] been expressly rejected." Campbell v. Blodgett, 978 F.2d 1502, 1509 (9th Cir. 1992) (citing Diaz v. United States, 223 U.S. 442 (1912)). "What was said in Hopt . . . on the presence of the defendant was dictum and no more . . . ." Id. (quoting Snyder v. Massachusetts, 291 U.S. 97, 118, n.2 (1934) *overruled on other grounds* Duncan v. Louisiana, 391 U.S. 145 (1968); Malloy v. Hogan, 378 U.S. 1 (1964)). However, "a defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge . . . . The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." U.S. v. Gagnon, 470 U.S. 522, 526 (1985) (quoting Snyder, 291 U.S. 97, 105-06, 108). "The Due Process Clause applies in lieu of the Sixth Amendment in situations where the defendant is not specifically confronting witnesses or evidence against him." U.S. v. Jones, 381 F.3d 114, 121 (2nd Cir. 2004) (citing Gagnon, 470 U.S. at 526.) In this situation, the Sixth Amendment applies, not the Due Process Clause of the Fourteenth Amendment, because Petitioner was specifically confronting Officer Menter when the suppression hearing was briefly

closed.  Thus, the Court will analyze Petitioner's claim under the Confrontation Clause of the Sixth Amendment.

      E.     <u>Right to Confront Witnesses (Ground Three)</u>

      In his Petition, Petitioner states his confrontation claim as follows "[t]he judge abused its discretion by removing Appellant and the public from the courtroom, and holding an *in camera* conversation with Officer David Menter denied Appellant the right to confront witnesses against him and by not suppression (sic) the illegally seized evidence." <u>Petition</u>, at 9.  In his Reply, Petitioner elaborates on this claim.  He asserts that his Sixth Amendment right to confront witnesses *at trial* was violated because he was unable to cross-examine the CRI who provided information to the police leading to his arrest.  See <u>Reply</u>, at 4 ("Sense [sic] CRI did not testify at Smith's trial Smith's conviction should be revers[ed] under the 6 U.S. Const. Amendment.")

      Claims are exhausted only when the same factual underpinnings and legal theories were first properly raised in the state courts.  <u>Abdullah</u>, at 412.  The confrontation issue Petitioner raises here, the inability to cross-examine the CRI at trial, was not raised in the Minnesota Court of Appeals.  <u>See</u> <u>Supp. Appx.</u>, Appendix 3, at 13-19.[5]  Therefore, Petitioner failed to exhaust his claim under the Sixth Amendment Confrontation Clause, and for the same reasons his prosecutorial misconduct claim is procedurally defaulted, this claim is also defaulted.

## III.    RECOMMENDATION

---

[5]    In his brief to the Minnesota Court of Appeals, Petitioner stated "[a] defendant has a constitutional right to confront the witnesses against him. . . This right of confrontation extends to suppression hearings. . . [citations omitted].  Appellants' Brief, <u>Supp. Appx.</u>, Appendix 3, at 17.  Petitioner concluded, "[a]ppellant was entitled to be present for anything Menter had to say about the informant's reliability.  He was entitled to cross-examine Menter about the informant's reliability." <u>Id.</u> at 19.  Petitioner did not raise the issue of confronting the CRI at trial.

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.      Petitioner's Application for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED**;

2.      This action be **DISMISSED WITH PREJUDICE**.

Dated: April 27, 2009

 s/ Arthur J. Boylan
ARTHUR J. BOYLAN
United States Magistrate Judge

Under District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by May 11, 2009, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

15